UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION


GOV'T EMPLOYEES INS. CO., GEICO     )     CASE NO.: 1:18-cv-20101
INDEMNITY CO., GEICO GENERAL INS.  )
CO., GEICO CASUALTY CO.,          )
                                  )
         Plaintiffs,           )
                                  )
    -v-                      )
                                  )
QUALITY DIAGNOSTIC HEALTHCARE    )
INC., JORGE MARTINEZ, CARLOS A.    )
MARTINEZ, DR. LUIS ANIBAL QUERAL  )
DR. MOULTON KEANE, IVELIS GARCIA  )
and MICHEL VIERA LMT.,          )
                                  )
         Defendants         )
_____)


## MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

COMES NOW the Defendants, QUALITY DIAGNOSTIC HEALTHCARE INC., et. al.,

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, moves for partial judgment on the

pleadings.  The grounds and authority for this motion are set forth in the following supporting

memorandum.  The memorandum is incorporated as part of this motion.

## MEMORANDUM OF LAW

1.      The Defendants respectfully submits this memorandum of law in support of Defendants' motion for partial judgment on the pleadings.

## BACKGROUND

2.      The GEICO Plaintiffs (collectively hereinafter "GEICO") commenced this action on January 9, 2018.  (Doc. No. 1).  In the second amended complaint, GEICO assert causes of action against Defendants for civil RICO violations under 18 U.S.C. § 1962(c) and (d), violation of the Florida Deceptive Trade Practices Act ("FDUTPA"), violation of the Florida Civil Remedies for Criminal Practices Act ("FCRCPA"), common law fraud and unjust enrichment.  [Doc. 65] Through these claims, GEICO seeks to recover damages in excess of $145,000 in personal injury protection insurance claims GEICO paid to the Defendants.

3.      The predicate acts alleged by GEICO for its causes of action are summarized as follows:

    (a)      Defendants misrepresented in the billing statements that Dr. Keane personally performed or directly supervised the underlying physical therapy services when in fact, the services were illegally performed by Co-Defendant Michel Viera ("Viera"), an unsupervised massage therapist, [Doc. 65, ¶¶ 184-244; 382-410];

    (b)      Defendants misrepresented in the billing statements the coding level for the patient evaluations by falsely up-coding the charges for said evaluations, [Doc. 65, ¶¶ 245-328; 351-381];

    (c)      Defendants made misrepresentations of implied fact that Defendant, Quality was operating in accordance with the Health Care Clinic Act where instead Quality was operating in violation of the Act due to Dr. Queral's failure to performed systematic reviews as medical director and failure to ensure that the health care practitioners maintained adequate licensure. [Doc. 65, ¶¶ 154-168].

- 1 -

(d)     Defendants made misrepresentations of implied fact that the healthcare services were medically necessary, [Doc. 65, ¶¶ 329-410];

(e)     Defendants made misrepresentations of implied fact that Quality was lawfully under the Health Care Clinic Act where Martinez unlawfully held an undisclosed ownership interest over Quality after transferring ownership of Quality to Acebo Martinez, [Doc. 65, ¶¶ 117-128];

(f)     Defendants made misrepresentations of implied fact that Defendants made misrepresentations of implied fact that Quality was lawfully operating under the Health Care Clinic Act where instead Quality was operating in violation of the Act due to Dr. Keane's failure to performed systematic reviews as medical director, and failure to ensure that the health care practitioners maintained adequate licensure, [Doc. 65, ¶¶ 169-183];

(g)     Defendants violated Florida's Patient Brokering Act, § 817.505, *Fla. Stat*., and Florida's Anti-Kickback Statute, § 456.054, *Fla. Stat*., by offering, paying soliciting, or receiving any commission, bonus, rebate, kickback or bribe –directly or indirectly, in cash or in kind –or from engaging in any fee-splitting arrangement of any type whatsoever, to either induce a patient referral or in exchange for a patient referral.[Doc. 65, ¶¶ 129-153]

## I.      LEGAL STANDARD ON THIS MOTION

4.      The standard for evaluating a motion for judgment on pleadings under Rule 12(c) is the same standard on a motion dismiss under Rule 12(b)(c)(6). *Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2nd Cir. 2006) As in a motion to dismiss, plausibility standard under *Twombly, infra*, applies on a motion for judgment on the pleadings. *Gentilello v. Rege*, 627 F.3d 540, 543-33 (5th Cir. 2010). A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 67 L.Ed.2d 929 (2010) Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true, even if doubtful. *Twombly,* 550 U.S., at 555, 127 S.Ct. at 1965.

5.      There is a two-step pronged approach in deciding whether a complaint states a cause of action. *American Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1290 (11th Cir. 2010) First, a court must eliminate legal conclusions and accept as true the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868, 173 L.Ed.2d 868 (2009) Secondly, the court must consider if the remaining factual allegations plausibly give rise to an entitlement to relief. *Id*. The plausibility standard calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the claim. *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Where a plaintiff has not nudged his claim across the line from conceivable to plausible, the complaint must be dismissed. *Id*. at 570, 127 S.Ct. at 1974. But, in deciding the motion, a court may infer from the factual allegations obvious alternative explanations that suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer. *Id*., at 567, 127 S.Ct. at 1972.

6.      The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Cleveland*, 448 F.3d. at 521. In each case, the court must accept as true the complaint's factual allegations and draw all inferences in the plaintiff's favor." *Id*. A complaint should not be dismissed on the pleadings unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. These principles, along with the *Twombly* "plausibility" standard, inform and guide the analysis on Rule 12(c) motion.[1] *Shedd v. Wells Fargo Bank, N.A*., 2016 WL 3264127 at 2 (S.D. Ala. 2016)

---

[1] A court is not necessarily required to enter a judgment on all claims and defenses on Rule 12(c) motion; the court may, instead, enter a partial judgment on the pleadings. *Dell Inc., v. 3k Computers, LLC*., 2008 WL 6600766 at 3 (S.D. Fla. 2008)

7.      A judgment on the pleadings is proper if there is a dispositive legal issue that precludes relief or it is based on an indisputably meritless legal theory.  *Grant v. Bank of New York, Mellon Corp*., 2013 WL 12382696 at 4 (N.D. Ga. 2013)

## II.      THE THERAPY IS LAWFUL

8.      GEICO alleges that the physical therapy is unlawfully performed in violation of the physical therapy license statute where it was performed by Viera, an unsupervised masseuse, who is not licensed as a physical therapist.[2]  The complaint fails to state a cause of action where an exception to the licensing statute applies.  The exception states:

> "No provision of this chapter *shall* be construed to prohibit any person licensed in this state from using any *physical agent* as a part of, or *incidental* to, the lawful practice of her or his profession under the statutes applicable to the profession of chiropractic physician, podiatric physician, doctor of medicine, *massage therapist*, nurse, osteopathic physician or surgeon, occupational therapist, or naturopath."

§ 486.161(1), *Fla. Stat*. (emphasis added)

9.      The statute is clear and unambiguous; therefore, it must be construed by its plain meaning.  *Holly v Auld*, 450 So.2d 217, 219 (Fla. 1984)

10.      The exception applies where, as here, (a) a masseuse is alleged to have performed the services; (b) a masseuse is one of licensing professions in the statute; (c) and physical agents were used <u>incidental</u> to massage.

11.      To make a plausible case that the therapy is unlawful, GEICO must allege facts that tend to show that the therapy did not meet the exception outlined in § 486.161(1).  More specifically, GEICO must that physical agents were not used as part of, or incidental to, massage.

---

[2]  The physical therapy license statute provides that "[n]o person shall practice, or hold herself or himself out as being able to practice, physical therapy in this state unless she or he is licensed in accordance with the provisions of this chapter.  § 486.028, *Fla. Stat*.

- 4 -

But, as this the case here, there are no such facts alleged. Thus, the Court may infer that physical agents were used incidental to massage.

12.     The massage therapy statute, moreover, is consistent with the exception outlined in § 486.161(1).  The statute provides that massage therapists may use physical agents as part of their practice:

> "[m]assage means the manipulation of the soft tissues of the human body with the hand, foot, arm, or elbow, whether or not such manipulation is aided by *hydrotherapy, including colonic irrigation, or thermal therapy; any electrical or mechanical device; or the application to the human body of a chemical or herbal preparation*."

§ 480.033(3), *Fla. Stat.* (emphasis added)

13.     Florida precedent is consistent with Defendants' argument.  The Court in *State Farm Mut. Auto. Ins. Co., v. Universal Med. Ctr of S. Florida Inc*., 881 So.2d 557 (Fla. 3d DCA 2004) held that a licensed professional under § 486.161(1) may use physical agents incidental to their respective licensing practice without running afoul of the licensing statute.

14.     The Court previously ruled that if a massage therapist is unsupervised, then the therapist is practicing massage. Doc., 58, p. 14. But following the Court's reasoning along this line, the Court must also conclude that the therapy is not unlawful where, as here, Viera is licensed as a masseuse, and the practice massage therapy is not unlawful; it is a statutorily regulated health care practice.  *See* §§ 480.033, *Fla. Stat., et. seq*.  A person must be licensed to practice massage therapy. § 480.033(4).  A masseuse does not need to be supervised to practice his profession.  This, undoubtedly, underscores the fallacy in GEICO's case on the question of legality.

15.     Defendants, however, anticipate that GEICO will argue that the only modality that Viera can lawfully perform without running afoul of the licensing statute is "massage."  This should be rejected.  First, the massage therapy statute provides that a massage therapist may use

physical agents as part of the practice.  § 480.033(3).  Second, the physical therapy licensing statute provides in part that "nothing in this chapter shall prohibit any person licensed in this state under any other law from engaging in the practice for which she or he is licensed." § 486.028.  Third, any physical agent that is used as part of, or <u>incidental</u> to, the practice of massage meets the exception outlined under § 486.161(1), *Fla. Stat*.  This is evident by the plain meaning of "incidental" as used in the exception. "Incidental" is defined by the dictionary as "1. Happening as a minor accompaniment to something else; 2.  Happening as a result of an activity."[3]  Fourth, the Court's dictum in *State Farm* is consistent with Defendants' position; the *State Farm* Court stated that "[t]he physical therapy modalities performed *also* fell within the common practice of … *massage therapists*."  *State Farm*, 881 So.2d at 560 (emphasis added).  Further,

16.    Finally, the fact that massage is not reimbursable under the pip statute is <u>not</u> a question of legality.  The pip statute does nothing more than provide a technical defense against reimbursement for massage regardless of who performs it. *See* § 627.736(1)(a)5., *Fla. Stat*. But unlike illegal acts, technical defenses under the pip statute are subject to waiver and estoppel.[4] Therefore, to state a cause of action for fraud, GEICO must allege that GEICO did <u>not</u> know that the therapy was being performed by a masseuse, and that had it known, GEICO would have rejected the charges under § 627.736(1)(a)5.  But, as shown hereafter in part IV of this brief, GEICO has failed to do precisely that.

---

[3]  https://en.oxforddictionaries.com/definition/incidental.
[4]  *See e.g., Florida Medical & Injury Center Inc., v. Progressive Exp. Ins. Co*., 29 So.3d 329, 341 (Fla. 5d DCA 2010)

- 6 -

## II.     COLLATERAL ESTOPPEL

17.     Judgment should be granted for Defendants where GEICO is collaterally estopped from re-litigating whether the therapy is unlawful.  Although this argument was not made in Defendants' motion to dismiss directed to the first amended complaint, this argument is being advanced now.

18.     A party may raise an affirmative defense, such as collateral estoppel, in a Rule 12(c) motion where the existence of the defense can be judged on the face of the complaint.  *Harley v. Health Center of Coconut Creek Inc.,* 518 F.Supp. 1364, 11368 (S.D. Fla. 2007) In considering such a challenge, the Court may take judicial notice of and consider documents which are public records, that are attached to motion for judgment on the pleadings, without converting it to motion for summary judgment.  *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Ramey v. Interstate Fire & Cas. Co.*, 32 F.Supp.3d 1199, 1204 (S.D. Fla. 2013).

19.     GEICO is collaterally estopped from re-litigating whether the physical therapy services were lawfully performed in this case.  Under Florida law, collateral estoppel bars re-litigation of an identical issue between parties or their privies which has already been determined by a valid judgment.  *Stogniew v. McQueen*, 656 So.2d 917, 919 (Fla.1995) The essential elements for collateral estoppel is that (1) the parties and issues be identical; (2) that the particular matter be fully litigated and determined in a contest which results in a final judgment of a court of competent jurisdiction.  *Mobile Oil Corp. v. Shevin*, 354 So.2d 372, 374 (Fla. 1977)

20.     The standard is met here. Quality recovered a declaratory judgment against GEICO in state court where the court declared in a final judgment that Viera, despite being unsupervised and unlicensed as a physical therapist, lawfully provided the services incidental to his licensing

- 7 -

profession pursuant to § 486.161(1).[5]   In the judgment, the Court also ruled that except for massage, which was not billed to GEICO, the statutory bar under § 627.736(1)(a)5 against massage reimbursement is inapplicable.   The state court reasoned that the modalities that the therapist performed incidental to massage, and did not manipulate the soft tissue by hand, foot or elbow.

21.     Although the judgment that Quality recovered against GEICO is on appeal, the law in Florida is that an appeal does not affect the preclusive effect of a judgment unless the appellate court "tries the case de novo."  *Reese v. Damato* 44 Fla. 692, 698-99, 33 So. 462, 464 (Fla. 1902); *See also CCB LLC v. Bank Trust*, 552 Fed.Appx. 963 (11th Cir. 2014); *In re Transworld Foods Inc.*, 41 B.R. 363 (M.D. Florida 1984); *Tharpe v. Nationstar Mortgage*, LLC, 2016 WL 7668476 (S.D. Florida 2016)

22.     In the state court litigation, the judgment is not being reviewed in "trial de novo" fact finding procedure on appeal.   The judgment, instead, is being reviewed on the record.   Thus, the judgment has preclusive effect notwithstanding the appeal.   *Reese*, 44 So. 698-99, 33 So. at 464.

23.     Against this back drop, judgment should be granted for Defendants to the extent that the complaint alleges that the therapy is unlawful on the basis that Viera is not licensed as a physical therapist.

## III     RES JUDICATA

24.     Partial judgment should be granted for Defendants on <u>all</u> of GEICO's causes of action on the grounds of *res judicata*.   Defendant Quality recovered a judgment in state court with respect to 14 of the 30 claims that make up the subject matter of this lawsuit.

---

[5]  The state court judgment is attached as an exhibit to this motion.

26.     Under the doctrine of *res judicata*, a judgment on the merits rendered in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action. *Fla. Dep't of Transp. v. Juliano*, 801 So.2d 101, 105 (Fla. 2001)

27.     In order for a suit to serve as a bar against a later one, four elements must be shown: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality of the persons for or against whom the claim is made. *Topps v. State*, 865 So.2d 1253, 1255 (Fla. 2004).

28.     The test in deciding if the "thing sued for" and the "cause of action" is the same is determined by the evidence. *Infra*. In other words, *res judicata* applies if the testimony produced in the second case is essentially the same as that which was, or would have been required to be, presented in the first action. *Gordan v. Gordan*, 59 So.2d 40, 44 (Fla. 1952); *See also Albrecht v. State*, 444 So.2d 8, 12 (Fla. 1984) superseded by statute on other grounds as stated in *Bowen v. Fla. Dep't of Envtl. Regulation*, 448 So.2d 566 (Fla. 2d DCA 1984).

29.     The test for *res judicata* is met. The parties are the same where Quality recovered a judgment against Plaintiffs, GEICO General Insurance Co., GEICO Indemnity Co., Gov't Employees Ins. Co.[6] Although the other co-Defendants were not parties in the state action, they are in privity as officers and employees of Quality.

---

[6] Although Plaintiff GEICO Casualty Co., was not a party in the state court action, GEICO Cas. Co., is in privity with the other GEICO plaintiffs.

30.     Likewise, the "cause of action" and "the thing sued for" is the same.  GEICO could have litigated the predicate acts of fraud, that are asserted here, as defenses to the state court action, and the evidence would have been same.

## IV.     MATERIALITY

31.     Judgment should be granted for Defendants on GEICO's causes of action for common law fraud and under RICO for failure to allege facts that tend to show that up-coding and listing the incorrect treating supplier in Box 31 of the billing statements are misrepresentations of <u>material</u> fact.[7]

32.     At common law, a matter is material only in two instances.  *Infra*.  The first is where "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action."  *Infra*.  The second is if "the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter important in determining his choice of action ... ."[8] *Restatement (Second) of Torts* § 538;  *See also Health Services Inc., v. Escobar*, ---U.S.---, 136 S. Ct. 1989, 2002-03, 195 L.Ed.2d 348 (2016);  *J.P. Morgan Securities, LLC., v. Geveran Investments Ltd.*, 224 So.3d 316, 325 (Fla. 5d DCA 2017);

33.     A misrepresentation of fact is **<u>not</u>** material where the decision maker assents with knowledge of the truth.  *Infra*.  As the Court in *Escobar* stated, but in the context of the False Claims Act, "if the Government pays a particular claim in full despite its actual knowledge that

---

[7]  To state a cause of action for common law fraud, a plaintiff must allege a misrepresentation concerning a material fact.  *Lance v. Wade*, 457 So.2d 1008, 1011 (Fla. 1984) The standard is the same in a RICO action predicated on mail fraud.  *Neder v. United States*, 527 U.S. 1, 119 S. Ct., 1827, 144 L.Ed.2d 35 (1999)

[8]  The rule is the same in contract law.  *See Restatement (Second) of Contracts*, § 162(2) ("A misrepresentation is material if it would be likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce the recipient to do so.")

certain requirements were violated, that is very strong evidence that those requirements are *not* material."[9] *Escobar,* 136 S.Ct., at 2003; *See also United States ex rel. Ruckh v. Salus Rehab., LLC*, 304 F. Supp. 3d 1258, 1264 (M.D. Fla. 2018) (relator failed to prove that the misrepresentations were material where "defendants delivered the services for which the governments were billed; the governments paid and continue to pay to this day despite the disputed practices, long ago known to all who cared to know.")

**(a) Up-coding**

34.     Judgment should be granted for Defendants' on GEICO's causes of action for common law fraud, and RICO, where the complaint fails to allege facts which show that up-coding is material where GEICO did not allege that even if the up-coding is cured, GEICO would still have denied the charge for the patient exams.[10]

35.     *United States, ex. rel., Petratos v. Genentech Inc*., 855 F.3d 481 (3rd Cir. 2017) supports Defendants' argument.  There, the Court affirmed a dismissal of a relator's cause of action for failure to plead sufficient facts to establish materiality.  The Court noted that the relator failed to allege that the government would not have reimbursed claims had the alleged deficiencies been cured. *Id.* at 940.  The result in *Petratos* should be the same here.

---

[9]  The Court in *Escobar* also held that that statutory conditions for payment are **not** automatically material despite being labeled as such by the legislature. *Escobar,* 136 S.Ct., at 2003-04.  *Escobar's* directive on this point is consistent with Florida pip statute where it provides that the parties can agree to what is, or what is not, material in the submission of claims. *Infra*. This is evident by the text.  The statute provides that billing statements must be properly completed. § 627.736(5)(d). ""Properly Completed" means providing truthful, substantially complete, and substantially accurate responses as to all material elements to each applicable request for information or statement by a means that may lawfully be provided and that complies with this section, or as *agreed* by the parties." § 627.732(13), *Fla. Stat*. (emphasis added)

[10]  Of course, GEICO may argue that it would still have denied the charge on the basis that Dr. Keane falsified his findings, but this must be rejected based on forthcoming argument.

36.     GEICO, moreover, pled itself out of court where GEICO alleges that the initial examination reports on their face did not meet the criteria for the code. For example, GEICO alleges that the severity of the problems, as indicated in the reports, show that the patients presented problems of low severity, not moderate severity as required by the code, Doc. 65., ¶¶ 258-271; the code misrepresented time spent with patients where the reports reflect that the examinations did not require more than 15 minutes of face to face time with the patient, Id., ¶¶ 272-287;  the exam reports reflect that the examinations did not meet the entire criteria of a "detailed" examination as required by the code, Id., ¶¶ 288-299; the examination reports reflect that it did not involve a low decision medical decision making as required by the code. Id.  ¶¶ 300-328.[11]

37.     Materiality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation. *Escobar*, 136 S.Ct., at 2003.  Under this standard, the complaint fails based on what GEICO alleged.  This is obvious.  If up-coding is material, GEICO would have denied the charge under § 627.736(5)(b)1e., based on what the reports showed on their face.  But despite this, GEICO paid the charge anyway when it didn't have to.[12]

38.     There is precedent on point. In *United States v. Sanford–Brown*, Ltd., 840 F.3d 445 (7th Cir. 2016), the Court affirmed a judgment dismissing a false claims action where there was no evidence that the government's decision to pay would likely or actually have been different had it

---

[11]  GEICO also alleges that the charges for the follow up patient exams were up-coded.  GEICO, on this point, alleges that the severity of the problems did not justify the code where the follow up exam reports indicate that the patients did not present problems of low to moderate severity, Id., ¶¶ 357-371; the exam reports reflect that the examinations did not meet the criteria of the code where Keane did not take an expanded problem focused patient history; he did not conduct a problem focused examination; he did not engage in a medical decision of low complexity. Id., ¶¶ 372-381.
[12]  The pip statute permits the insurer to deny charges for upcoding.  *See* § 627.736(5)(b)1.e.

known of violation.  This is precisely the case here.  GEICO pled that it knew of the violation (i.e., upcoding), and yet, paid the charge.

**(b)     Box 31**

39.     Similarly, GEICO's causes of action for fraud, and RICO, suffers from the same deficiency with respect to Dr. Keane being misrepresented in Box 31 of the billing statements as the treating supplier of the physical therapy.  The complaint does not make a plausible case that this misrepresentation is about a material fact.

40.     To state a case for materiality in this context, GEICO must allege facts that show that had it known that Viera was performing the therapy, GEICO would have denied the charges under § 627.736(1)(a)5.[13]  But once again, GEICO pled itself out of court.  GEICO alleged facts that it **<u>knew</u>** that the therapy was being performed by Viera, not Dr. Keane.  For instance, GEICO alleges that during the brief time in question, GEICO received billing statements from other medical facilities that represented over 950 hours of physical therapy, accounting more than $378,000, which represented that Keane himself was performing the therapy. Doc. 65; ¶¶ 198-204. In on example, GEICO alleges that it received billing statements from other medical facilities, including Quality, which represented that Keane performed 36 hours of physical therapy services in one day.  Id., ¶ 212 (i).  The complaint has several examples of the same thing.  Id., ¶¶ 212(ii-viii).  This, needless to pay, put GEICO on notice that Keane could not possibly be performing the therapy.  GEICO also alleges that it sued Defendant Martinez in a prior case for the same billing

---

[13]  GEICO implies that if Viera was supervised, this would influence GEICO's decision. But that is not true. Supervised or not, massage is not payable; it makes no difference who performs it. *See* § 627.736(1)(a)5., *Fla. Stat*. ("Medical benefits do not include massage as defined in s. 480.033 ... regardless of the person, entity, or licensee providing massage ... .")

irregularities from another provider, Benefica Health Ctr. Corp., ("Benefica").  GEICO alleges

that Martinez owned Benefica.  Id., at ¶ 73-74 GEICO alleges that Garcia, who did the billing this

case, was also employed at Benefica. Id., ¶ 75 GEICO alleges that Quality, like Benefica, billed

for billing for physical therapy provided by unsupervised massage therapists.  Id. at ¶¶ 79, 88.

Against this back drop, GEICO clearly knew what was going on.

41.     In light of the internal inconsistencies, the Court should reject GEICO's bald

assertion that misrepresenting Keane as the treating supplier is fraudulent.  The law is that party is

bound by assertions of fact in a pleading. *Schott Motorcycle Supply Inc., v. American Honda,*

*Motor Co., Inc.*, 976 F.2d 58, 61-62 (1ˢᵗ Cir. 1992) Factual allegations that are inconsistent with a

party's admissions should be rejected.  *Id.*  This principle applies here.

42.     The Court, moreover, can infer that GEICO knew who was performing the therapy

based on the fact that GEICO received the therapy records.  This inference is also supported by

the fact that GEICO did **not** allege that the records falsely represented that Keane performed

therapy.  Indeed, if the therapy records misrepresented that Keane performed the services, GEICO

would have alleged this too.  Thus, based on these inferences, it is clear that GEICO paid the

therapy services knowing that they were performed by a masseuse. Hence, this is not a material

fact. If it were, GEICO would have invoked § 627.736(1)(a)5 and denied the charges for the

therapy.

43.     Defendants contention is supported by *In re Plavix Marketing, Sales Practice and*

*Products Liability Litigation (No.II), v. Bristol Meyers Squibb Co., et. al*., 332 F.Supp.3d 927 (D.

N.J. 2017).  There, the relator baldly alleged that the government would not have reimbursed the

defendant had it been aware of the alleged false certification of cost effectiveness; but the relator

also alleged facts that the government would have paid the claims anyway.  Based on this internal

- 14 -

inconsistency, the Court dismissed the complaint for failure to allege a plausible case for materiality. *Id.*, at 947-48. The result in *Plavix* should be the same here given the internal inconsistencies.

## IV. FALSITY

44. Judgment should be granted for Defendants' on <u>all</u> of GEICO's causes of action the complaint with respect to the issue of whether Dr. Keane falsified his opinion. Generally, an opinion is not actionable for deceit. *Mejia v. Jurich*, 781 So.2d 1175, 1177 (Fla. 3d DCA 2001) But there is an exception. *Infra.* The exception, as stated in the restatement of law, provides that "[a] statement of opinion as to facts *not disclosed* and *not otherwise known to the recipient may*, if it is reasonable to do so, be interpreted by him as an implied statement that the facts *known* to the maker are not incompatible with his opinion."[14] *Restatement (Second) Torts* § 539(1)(a) (emphasis added); *See also Mejia*, 781 So.3d at 1177.

45. Applying the law, it is clear that the complaint is deficient on its face. GEICO did not allege material facts external to the records, which were unknown to GEICO, that are incompatible with Keane's opinion, and that Keane knew of such facts. As evident by the complaint, the alleged falsity is based on the records that GEICO used to adjust the claims. This is obvious where GEICO alleged what Dr. Keane reported in each examination, and what he prescribed. GEICO also knew, based on the records it used to adjust the claims, the circumstances of the accidents; that the insureds, in some cases, did not go to the hospital. There is nothing to

---

[14] In comments to subsection (1) of the *Restatement (Second) of Torts* under § 539, the restatement states that "a statement which, though in form an opinion upon facts not disclosed or otherwise known to their recipient, is reasonably understood as implying there are facts that justify the opinion or at least there are no facts that are incompatible with it."

suggest here that Keane failed to disclose incompatible facts with his opinion, which he knew of, but were unknown to GEICO.  *See Restatement (Second) Torts* § 539(1)(a)

46.     Defendants' position is supported by legal precedent.  In *United States v Paulus*, 894 F.3d 267 (6th Cir. 2018), the Court concluded that a doctor's clinical judgment is actionable for deceit.  The evidence showed that the government's proof, which were external to the medical records, showed that the doctor saw one thing but wrote down another.  *Id.  See also United States v. Persaud*, 866 F.3d 371 (6th Cir. 2017) (facts external to the medical records supported jury's finding that physician falsified his medical diagnosis)

47.     In *Graves v. Plaza Med. Ctrs., Corp.*, 276 F.Supp.3d 1335, 1341 (S.D. Fla. 2017), the Court determined there was a jury question on whether the doctor falsified his diagnosis where the relator did **not** limit her proof to expert testimony, and evidence, external to the records, created a question of fact regarding whether the physician falsified his diagnosis.

48.     The Court in *United States ex. rel. Polukoff v. St. Mark's Hospital*, 895 F.3d 730 (10th Cir. 2018) found that the complaint stated a cause of action for fraud where the plaintiff alleged facts, external to the provider's records, that indicated that the physician falsified his diagnosis.

49.     The cases, cited hereinbefore, are consistent with principle that there must be incompatible facts with the speaker's opinion that were unknown to the recipient.  *Restatement (Second) Torts* § 539(1)(a) But the complaint here does not meet this standard; GEICO's entire case is predicated on Defendants' submissions.  This is insufficient.  *See Infra*.

50.     Defendants' argument is reinforced by *Allstate Ins., Co., v. Advanced Health Professionals*, *P.C.,* 256 F.R.D. 49 (D. Conn. 2008).  There, the Court dismissed the insurer's RICO action where the insurer's claim that the treating doctor's falsified his clinical opinion was

solely based on the records that the insurer used to adjust the claims.  *Id.* at 62.  This is exactly the situation here.

## V.      CAUSATION

51.      The allegations in support of GEICO's causes of action for common law fraud, RICO and FDUTPA is deficient on causation.  Although GEICO baldly asserts that it "relied" on the misrepresentations, Doc., 65, ¶¶ 413-420, this should be rejected.  The complaint, as argued before, contains allegations that belie this.

52.      To state a cause of action for common law fraud, a plaintiff must allege consequent injury acting in reliance on the representation. *Johnson v. Davis*, 480 So.2d 625, 627 (Fla. 1986); *See also Mirken v. Wasserman*, 5 Ca. 4th 1082, 1092 (1993) ("reliance is the mechanism of causation in an action for deceit.")

53.      To state cause of action under RICO and FDUTPA, a plaintiff must allege facts that show causation.  *Hennegan v. Arriola*, 855 F.Supp.2d, 1354, 1361 (S.D. Fla. 2012); § 501.211(2), *Fla. Stat.*; *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008); *See also Restatement (Second) Torts*, § 546.

54.      A recipient's knowledge, moreover, breaks the chain of causation.[15]  *Bridge*, *554 U.S.* at 658-59, 128 S.Ct., at 2144.   Indeed, there is no causation where the recipient knows the

---

[15]  Although in *Bridge, supra,* the Court ruled that "reliance" need not be alleged to state a cause of action for mail fraud under RICO, *Bridge* must be understood in its proper context. *Bridge* still requires proof of reliance to establish causation, but a plaintiff is not necessarily required to prove that he, himself, relied on the misrepresentation. Proximate cause can be established in a situation, as in *Bridge*, where a third party is the recipient of the misrepresentation, and there a sufficient nexus between such reliance and the plaintiff's injury. In this case however, the recipient of the alleged misrepresentation is not a third party but instead GEICO; therefore, GEICO must prove that it relied on the alleged misrepresentations to establish causation.

truth or where the falsity is obvious. *Besett v. Basnett*, 389 So.2d 995, 998 (Fla. 1980); *See also Norman v. Padgett*, 125 So.3d 977 (Fla. 4d DCA 2013)

55.     There is no causation here to speak of.  The records that GEICO used to adjust the claims put GEICO on notice of the upcoding, who performed the therapy, Keane's findings, and the circumstances of the underlying accidents.[16]

## VI.     SERVICES NOT RENDERED

56.     Judgment should be granted for Defendants on <u>all</u> of GEICO's causes of action where GEICO alleges that it received billing for services not rendered.  The complaint states that "in many cases, the fraudulent services were never provided in the first instance."  Doc., 65 ¶ 2 (iv).

57.     The Court should reject this bald statement.  Conclusory allegations of fraud do not meet the heightened pleading standard under Rule 9(b).  *Allstate Ins. Co., v. Advanced Health Professionals, P.C.*, 256 F.R.D. 49 (D. Conn. 2008)

58.     Contrary to GEICO's naked assertion, the factual allegations tell a different story. The story is <u>not</u> that Defendants billed for services not rendered, but rather that the services were not medically necessary; charges were up-coded; Defendants' concealed who performed the therapy; the medical directors did not perform their duties.  There is nothing in the face of the

---

[16]  Indeed, it begs the question how GEICO could have relied on Dr. Keane's clinical judgment where GEICO now, for the first time, takes issue with the fact that Keane reported substantially the same complaints, gave the same therapy prescription, the patients did not go to the hospital, and that some of the accidents were nothing more than a minor "fender bender." GEICO was clearly in a position to deny the claims based on this, but GEICO chose not to.

complaint where facts are alleged, with particularity, that Defendants billed for services not rendered.

59.     The facts here are analogous to the facts in *Allstate Ins. Co., supra.*  There, the Court dismissed the insurer's a RICO action where the insurer failed to allege, with particularity, what services were not rendered.  *Id.* at 61.  The result here should be the same.

60.     Defendants note that although GEICO alleges that the Dr. Keane did not perform the patient exams because the results were phony, this is insufficient.  To allege facts to establish falsity in this context, GEICO must allege facts, external to the medical records, that demonstrate the Keane did not perform the exams.  Merely alleging that the diagnosis that Dr. Keane reported in each case is "phony" or "pre-determined," and therefore the exams were not performed, is insufficient.  *See Allstate Ins., Co., supra.*

61.     Defendants also have support from *Gov't Employees Ins. Co.,* v. *Barron Chiropractic & Rehab., P.C.*, 2017 U.S. Dist. LEXIS 130278 (D. Mass. 2017) There, the Court denied the provider's motion to dismiss where the insurer alleged that it obtained sworn statements that called into question the doctor's diagnosis, and whether the services were performed.  The facts alleged in *Barron* are not alleged here.

62.     Finally, leave to amend should not be granted where the complaint was previously dismissed with leave to amend and the second amended complaint was filed <u>after</u> the parties completed discovery.  *Billard v. Rockwell Intern. Corp.*, 683 F.2d 51 (2nd Cir. 1982) GEICO is unable to cure the deficiency with a third amendment; if discovery produced evidence that services were not rendered, GEICO would have alleged it with particularity.  *See Id.*, at 61-62

## VII.   THE CLINIC ACT

63.   Judgment should be granted on <u>all</u> of Defendants' causes of action based on Defendants' alleged failure to ensure that Viera is adequately licensed for the level of care being provided; Defendants established that the therapy services were lawfully rendered despite the fact that Viera is not licensed as a physical therapist.[17]

64.   Likewise, judgment should be granted on <u>all</u> of Defendants' causes of action where GEICO alleges that Defendants Queral and Keane did not perform systematic reviews under § 400.9935(1), *Fla. Stat*.   GEICO's entire case on this point is that Defendants could not have performed systematic reviews where Defendants did not correct the deficiencies in the billing statements, nor the alleged falsity in Keane's reports.   But, as established before, the deficiencies and Keane's examination results are <u>not</u> misrepresentations of material fact as evident by the inadequacy of GEICO's complaint.[18]

### <u>CONCLUSION</u>

Based on the arguments above, Defendants' request that Defendants' motion for partial judgment on the pleadings be granted.

---

[17]   The Clinic Act requires that "[t]he medical director or the clinic director shall ... [e]nsure that all practitioners providing health care services or supplies to patients maintain a current active and unencumbered Florida license... [and] that all health care practitioners at the clinic have active appropriate certification or licensure for the level of care being provided."   § 400.9935(1), *Fla. Stat*.

[18]   The law requires that a medical director shall "[c]onduct systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful. Upon discovery of an unlawful charge, the medical director or clinic director shall take immediate corrective action." § 400.9935(1), *Fla. Stat*.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of this document was filed and served through the CMS/EFC system on this 28th day of March 2019 to counsel of record on the attached service list.

Respectfully Submitted,

*/s/Christian Carrazana*
Christian Carrazana, Esq.
Fla. Bar No.: 188115
**CHRISTIAN CARRAZANA, P.A.**
P.O. Box 900520
Homestead Florida 33090
Tel No.: (786) 226-8205
Email:  christian@carrazana-legal.com
*Attorney for Defendants*

**SERVICE LIST**

**Case No. 18-20101-Civ-MARTINEZ/GOODMAN**

Lindsey R. Trowell, Esq.
John P. Marino, Esq.
Kristen L. Wenger, Esq.
SMITH, GAMBRELL & RUSSELL, LLP
50 N. Laura Street, Suite 2600
Jacksonville Florida 32202
Phone:  (904) 598-6100
Facsimile: (904) 598-6204
ltrowell@sgrlaw.com
jmarino@sgrlaw.com
kwenger@sgrlaw.com

Max Gershenoff, Esq.
Barry I. Levy, Esq.
Steve Henesy, Esq.
RIVKEN RADLER LLP
926 RXR Plaza
Uniondale, New York 11550
Phone: (516) 357-3000
Facsimile: (516) 357-3333
max.gershenoff@rivken.com
barry.levy@rivken.com
steve.henesy@rivkin.com