UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 18-20101-CIV-MARTINEZ/OTAZO-REYES

GOVERNMENT EMPLOYEES INSURANCE
CO., GEICO INDEMNITY CO., GEICO
GENERAL INSURANCE COMPANY and
GEICO CASUALTY CO.,

      Plaintiffs,

v.

QUALITY DIAGNOSTIC HEALTH CARE
INC., JORGE E. MARTINEZ, CARLOS ACEBO
MARTINEZ, LUIS ANIBAL QUERAL, M.D.,
MOULTON KEANE, M.D., IVELIS GARCIA,
and MICHEL VIERA, LMT,

      Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE came before the Court on the respective motions for summary judgment (DE 60, 63) filed by Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs"), and by Defendants Quality Diagnostic Health Care, Inc. ("Quality"), Jorge E. Martinez ("Martinez"), Carlos Acebo Martinez ("Acebo Martinez"), Luis Anibal Queral, M.D. ("Queral"), Moulton Keane, M.D. ("Keane"), Ivelis Garcia ("Garcia"), and Michel Viera, LMT ("Viera")(collectively "Defendants"). The Court has reviewed the motions, all record evidence, and is otherwise fully advised of the premises. For the reasons set forth below, and with the benefit of a hearing in this matter, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs'

motion for summary judgment (DE 60) and **DENIES** Defendants' motion for summary judgment (DE 63).

I.     <u>BACKGROUND</u>

     A.     **Procedural History**

This action seeks to recover money that Plaintiffs allege Defendants obtained by submitting fraudulent and unlawful no-fault insurance ("personal injury protection" or "PIP") charges through Quality, a Florida health care clinic (*See generally* DE 65, Second Amended Complaint). Plaintiffs also seek a declaration that they are not legally obligated to pay Quality's outstanding PIP charges, which Plaintiffs likewise contend to be fraudulent and unlawful.

In particular, Plaintiffs allege that Quality was not in compliance with Florida's Health Care Clinic Act, Fla. Stat. §§ 400.900-400.995 ("Clinic Act"), Florida's Patient Brokering Act, Fla Stat. § 817.505 ("Patient Brokering Act"), and Florida's Anti-Kickback Statute, Fla. Stat. § 456.054 ("Anti-Kickback Statute"), and therefore was not eligible to receive PIP reimbursement, because: (1) Quality did not have a medical director who legitimately fulfilled the statutory duties required of a medical director; (2) Quality failed to disclose and acted to conceal Martinez's ownership interest in its clinic licensing applications; and (3) Defendants paid illegal kickbacks to patients who agreed to seek treatment at Quality.

Additionally, Plaintiffs allege that Defendants' billing records misrepresented that the underlying health care services were lawfully provided and billed to Plaintiffs, because: (1) most of the underlying services were unlawfully performed by an unsupervised massage therapist, Viera; (2) Viera was not licensed to provide the pertinent services without supervision; (3) in an attempt to conceal the fact that the underlying services were performed without supervision by Viera, Defendants misrepresented in billing records that Keane, a licensed physician, performed

or directly supervised the performance of the services; (4) the underlying services were not performed at all or were not medically necessary; and (5) the underlying services were performed pursuant to kickbacks that Defendants paid to patients who agreed to seek "treatment" at Quality.

Based on these allegations, Plaintiffs assert the following counts: (1) Declaratory Judgment against Quality seeking a declaration that Plaintiffs do not have to pay the allegedly fraudulent, pending PIP claims; (2) violation of RICO, 18 U.S.C. § 1962(c) against Martinez, Acebo Martinez, and Garcia; (3) violation of RICO, 18 U.S.C. § 1962(d) against Martinez, Acebo Martinez, Queral, Keane, Garcia, and Viera; (4) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201-501.213, against all Defendants; (5) violation of the Florida Civil Remedies for Criminal Practices Act, Fla. Stat. §§ 772.101-772.19, against Martinez, Acebo Martinez, Queral, Keane, Garcia, and Viera; (6) common law fraud against all Defendants; and (7) unjust enrichment against all Defendants. (DE 65).

On March 4, 2019, each side filed a motion for summary judgment. Plaintiffs' motion seeks summary judgment on their claims for declaratory judgment, unjust enrichment, FDUTPA, and common law fraud. Defendants seek summary judgment dismissing all of Plaintiffs' claims.

Plaintiffs contend that the undisputed facts demonstrate that: (i) Defendants' charges for patient examinations misrepresented the nature, extent, and results of the examinations; (ii) Defendants "knowingly" – as that term is defined in Florida's no-fault insurance statute – made misrepresentations in connection with the claims; (iii) Defendants' "physical therapy" services either unlawfully were performed by Viera, an unsupervised massage therapist, or else constituted non-reimbursable massage; (iv) Defendants' billing for the "physical therapy" services falsely represented that Keane directly supervised the services, which made the services appear to be eligible for reimbursement, when in fact

3

they were not; and (v) Quality operated in violation of the Clinic Act, because it lacked a medical director who actually fulfilled the statutory requirements applicable to clinic medical directors.

Defendants argue that the record is devoid of evidence to support Plaintiffs' claims. In addition, Defendants argue that, to the extent Quality's billing contained the misrepresentations outlined by Plaintiffs, those misrepresentations were not "material," that GEICO was on notice of the misrepresentations contained in Quality's billing and therefore did not rely on them, and that the services performed by Viera were performed "incidental to" his practice of massage, and were therefore reimbursable. Finally, Defendants argue that the doctrines of equitable estoppel, res judicata and collateral estoppel preclude some of Plaintiffs' claims in this action.

Because the Court views the upcoding and physical therapy issues as dispositive in this case, the Court declines to address the issues arising under the Anti-Kickback Statute, or potential further violations of the Clinic Act and Patient-Brokering Act as alleged by GEICO.

### B.   Undisputed Facts

#### 1.   The Parties

Defendant, Quality Diagnostic Health Care, Inc. ("Quality"), is a Florida corporation that purported to be properly licensed as a healthcare clinic under the Florida Health Care Clinic Act, Fla. Stat. § 400.990 *et seq.* (the "Clinic Act").  (DE 61, Plaintiffs' Statement of Material Fact ("Pls.' SOF") ¶ 1). Between May 2017 and August 2017, Quality purported to provide putative initial examinations, follow-up examinations, and physical therapy services and then sought reimbursement for those purported healthcare services from GEICO as the assignee of the GEICO insureds' no-fault insurance ("no-fault", "personal injury protection", or "PIP") benefits. (Pls.' SOF ¶ 3).

Between November 2016 and late August 2017, Defendant Jorge Martinez ("Martinez") purported to be the president and sole owner of Quality. (Pls.' SOF ¶ 7). Then, from late August 2017 to the present, Defendant Carlos Acebo Martinez ("Acebo") has purported to be the president and sole owner of Quality. (Pls.' SOF ¶ 8). Acebo is Martinez's first cousin. (*Id*.). Defendant Ivelis Garcia ("Garcia") purported to serve as Quality's office manager during the entire period when Quality was billing GEICO. (Pls.' SOF ¶ 9). In this capacity, Garcia created and submitted Quality's billing to insurers and managed Quality's day-to-day operations. (*Id*.). Defendant Luis Anibal Queral, M.D. ("Queral") purported to serve as Quality's medical director between May 2017 and September 2017. (Pls.' SOF ¶ 10).

Between October 2017 and May 2018, Defendant Moulton Keane, M.D. ("Keane") purported to serve as Quality's medical director. (Pls.' SOF ¶ 11). Keane purported to personally perform all of the patient examinations that were billed through Quality to GEICO, and Quality's billing represented that Keane directly supervised all of the putative physical therapy services billed through Quality to GEICO. (*Id*.). Defendant Michel Viera, LMT ("Viera") purported to personally perform all of the putative physical therapy services that were billed through Quality to GEICO. (Pls.' SOF ¶ 12).

### 2.    The Billing Dispute

#### a.    Upcoding of Initial and Follow-Up Visits

Quality billed GEICO for its healthcare services using current procedural terminology ("CPT") codes. (Pls.' SOF ¶ 13). CPT codes are billing codes that are promulgated by the American Medical Association ("AMA") for use in healthcare billing, and are the standard healthcare billing codes used by healthcare providers throughout the United States. (*Id.* ). Each individual CPT code is used to bill for a specific healthcare service, and the use of a specific CPT code to bill for a particular service represents that the underlying healthcare service was properly performed in accordance with the

standards applicable to the CPT code that is used. (Pls.' SOF ¶ 14). Physicians, clinics, and other licensed health care providers either know the requirements for the CPT codes they use in their billing, or else they should know the requirements for the CPT codes they use in their billing, because the use of a particular CPT code to bill for a particular service represents that the service embodied by the CPT code actually was provided, and was provided in accordance with the relevant standards of care. (*Id.*).

When GEICO insureds first presented at Quality seeking treatment, they each purportedly received an initial examination. (Pls.' SOF ¶ 28). Defendant Keane purported to personally perform all of the initial examinations of GEICO insureds at Quality. (Pls.' SOF ¶ 29). Quality, Martinez, Garcia, Keane, and Queral then billed the initial examinations to GEICO, or caused them to be billed to GEICO, under CPT code 99203, resulting in a charge of $250.00 for each initial examination that they purported to perform and/or provide. (Pls.' SOF ¶30).

Pursuant to the AMA guidelines for the use of CPT codes, the use of CPT code 99203 to bill for an initial patient examination represents—among other things—that: (i) the patient presented with "moderately severe" health problems; (ii) the examination involved at least 30 minutes of face-to-face time with the patient or the patient's family; (iii) the examination was "detailed", meaning that the examining physician documented an extended examination of the affected body areas and other symptomatic or related organ systems; and (iv) the examination required the examining physician to engage in legitimate, "low complexity" medical decision-making. (Pls.' SOF ¶ 31).

However, although Quality, Martinez, Garcia, Keane, and Queral billed GEICO for Keane's purported initial examinations using CPT code 99203, the putative examinations did not meet any of the requirements for the use of CPT code 99203; the use of CPT code 99203 to bill for the putative examinations falsely inflated the level of PIP reimbursement to Quality, and the charges therefore were upcoded. (Pls.' SOF ¶ 32). In particular: (i) the GEICO insureds whom Keane purported to examine

at Quality presented with – at most – low or minimal severity soft tissue injuries such as acute strains and sprains, not moderate severity problems; (ii) the examinations did not legitimately entail 30 minutes of face-to-face time between Keane and the insureds or their families; (iii) in purporting to perform the examinations, Keane never documented an extended examination of the patients' affected body areas and other symptomatic or related organ systems; and (iv) the examinations did not involve any legitimate "low complexity" medical decision-making. (*Id.*).

Quality, Martinez, Garcia, Keane, and Queral then submitted, or caused to be submitted, a purported examination report for each initial examination of GEICO insureds that they purported to perform and/or provide at Quality. The initial examination reports were submitted or caused to be submitted through Quality to GEICO in support of Quality's claims for reimbursement for the initial examinations. (Pls.' SOF ¶ 33).

In addition to the purported initial examinations, Quality purported to provide GEICO insureds with multiple follow-up examinations. (Pls.' SOF ¶ 46). Similarly, Keane purported to personally perform all of the follow-up examinations of GEICO insureds at Quality. (*Id.*). Quality, Martinez, Garcia, Keane, and Queral then billed the follow-up examinations to GEICO, or caused them to be billed to GEICO, under CPT code 99213, each resulting in a charge of $150.00. (Pls.' SOF ¶ 47).

Pursuant to the AMA guidelines, the use of CPT code 99213 to bill for a follow-up patient examination represents – among other things – that: (i) the patient presented with low to moderate severity health problems; and (ii) the examining physician performed and documented at least two of the following three components: (a) took an "expanded problem focused" patient history; (b) conducted an "expanded problem focused physical examination"; and (c) engaged in medical decision-making of "low complexity." (Pls.' SOF ¶ 48).

However, although Quality, Martinez, Garcia, Keane, and Queral billed GEICO for Keane's purported follow-up examinations using CPT code 99213, the putative examinations did not meet any of the requirements for the use of CPT code 99213, the use of CPT code 99213 to bill for the putative examinations falsely inflated the level of PIP reimbursement to Quality, and the charges therefore were upcoded. (Pls.' SOF ¶ 49). In particular: (i) by the time the GEICO insureds appeared at Quality for the follow-up examinations, the insureds either did not have any presenting problems at all as the result of their minor accidents, or else their presenting problems were of minimal severity; and (ii) in connection with the putative follow-up examinations, Keane did not conduct any legitimate physical examinations. (*Id.*).

### b.    Physical Therapy by an Unsupervised Masseuse

Moreover, virtually every GEICO insured who presented at Quality received a course of purported physical therapy services. (Pls.' SOF ¶ 50). Quality, Martinez, Garcia, Keane, Queral, and Viera then billed the putative physical therapy services to GEICO, or caused them to be billed to GEICO. (Pls.' SOF ¶ 51). None of the putative physical therapy services that were billed through Quality to GEICO was performed or supervised by licensed physical therapists or physicians. (Pls.' SOF ¶ 54). Rather, all of the putative physical therapy services that were billed through Quality to GEICO were performed—to the extent that they were performed at all—by Viera, an unsupervised masseuse who was not licensed to practice physical therapy. (*Id.*).

Viera lacked the training, education, and licensure necessary to perform physical therapy services without supervision by a licensed physician or physical therapist. (Pls.' SOF ¶ 55). All of the billing submitted through Quality to GEICO for putative physical therapy services falsely represented that Keane had directly supervised all of the purported physical therapy services. (Pls.' SOF ¶ 56). In

fact, Keane did not supervise any of the purported physical therapy services at Quality. (Pls.' SOF ¶ 57).

Quality's Florida Agency for Health Care Administration healthcare clinic license application stated that Quality would provide massage therapy services, but not physical therapy services. (Pls.' SOF ¶ 60). When Viera purported to provide physical therapy services to GEICO insureds at Quality, Viera—who held only a massage therapy license, and was not licensed to practice or perform physical therapy services—simultaneously purported to provide every insured with massage services. (Pls.' SOF ¶ 63).

Nevertheless, it is undisputed that "physical agents" were used in all of the all therapy that Quality billed to GEICO for payment. (DE 76, Defendants Statement of Material Facts in Opposition ("Defs.' SOF") ¶ 117). Thus, Defendants claim, none of the therapy that was charged to GEICO involved manipulation of the soft tissue by hand, foot or elbow by Viera. (Defs.' SOF ¶ 118). In essence, although Defendants admit that Viera performed massage, Defendants state that GEICO was not billed for that massage. (Def. SOF ¶ 120). The parties dispute whether the therapy that was performed by Viera can be classified as massage or as physical therapy "incidental" to massage.

In total, between 2017 and the present, GEICO has paid Quality $145,716.34 in reliance on the claims for PIP benefits submitted through Quality to GEICO. (Pls.' SOF ¶ 4). Quality deposited the checks GEICO issued in payment of its PIP claims, and has not returned the money. (*Id.*). In addition, GEICO has received at least $79,000 in PIP billing from Quality that remains unpaid. (Pls.' SOF ¶ 5). Quality currently is attempting to collect on much of this unpaid billing. (*Id.*). Though Quality continues to attempt collection on its outstanding PIP billing, the Florida Agency for Health Care Administration reports that Quality was closed as of May 25, 2018. (Pls.' SOF. ¶ 6).

## II.   **LEGAL STANDARDS**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In making this determination, the Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment*." Carlson v. FedEx Ground Package Sys.*, *Inc*., 787 F.3d 1313, 1317–18 (11th Cir. 2015) (quoting *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment. *See United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 2d 1428, 1438 (11th Cir. 1991). Once this initial burden is met, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). But if the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Applying these standards to the present matter, the Court concludes that summary judgment should be granted in GEICO's favor and Defendants' summary judgment motion should be denied.

### III.  <u>ANALYSIS</u>

#### A.  **Legal Framework**

Florida has a statutory system designed to ensure that motor vehicle accident victims are compensated for their injuries. The statutory system is set forth in the Florida Motor Vehicle No-Fault Law (the "No-Fault Law," Fla. Stat. §§ 627.730-627.7405), which requires automobile insurers to provide PIP benefits to their insureds. Under the No-Fault Law, an insured can assign his or her right to PIP benefits to health care services providers in exchange for health care services. *See* Fla. Stat. § 627.736(5).

Pursuant to the No-Fault Law, insurers are not required to pay PIP benefits: (i) for any service or treatment that was not lawful at the time rendered; (ii) to any person who knowingly[1] submits a false or misleading statement relating to the claim or charges; (iii) for any treatment or service that is upcoded[2]; or (iv) with respect to a bill or statement that does not substantially meet the billing requirements set forth in the No-Fault Law. *See* Fla. Stat. § 627.736(5)(b).

As relevant here, in addition, the No-Fault Law prohibits PIP reimbursement for massage, or to massage therapists. *See* Fla. Stat. § 627.736(1)(a)(5) ("Medical benefits [that are reimbursable

---

[1] The No-Fault Law defines "knowingly" as when "a person, with respect to information, has actual knowledge of the information; acts in deliberate ignorance of the truth or falsity of the information; or acts in reckless disregard of the information, and <u>proof of specific intent to defraud is not required</u>." *See* Fla. Stat. § 627.732(10) (emphasis added).

[2] The No-Fault Law defines "upcoding" as "an action that submits a billing code that would result in payment greater in amount than would be paid using a billing code that accurately describes the services performed." *See* Fla. Stat. § 627.732(14).

under the No-Fault Law] do not include massage . . . regardless of the person, entity, or licensee providing massage . . . and a licensed massage therapist . . . may not be reimbursed for medical benefits under this section.").

A central issue in this case concerns the interplay between the physical therapy and massage licensing statutes. Under the Florida physical therapy licensing statute, Fla. Stat. § 486.028, massage therapists may not practice physical therapy, or hold themselves out as being able to practice physical therapy, unless they have an actual license to practice physical therapy, as opposed to massage therapy. The physical therapy licensing statute, however, is subject to a notable exception. This exception provides in pertinent part that "[n]o provision of this chapter shall be construed to prohibit any person licensed in this state from using any physical agent as a part of, or incidental to, the lawful practice of her or his profession under the statutes applicable to the profession of . . . massage therapist . . . ." Fla. Stat. § 486.161(1).

But even though it is not unlawful for a massage therapist to use a "physical agent" ancillary to a massage without a physical therapy license, this does not convert a massage into a physical therapy or make it reimbursable; indeed, the massage therapy licensing statute plainly defines "massage" to include the use of physical agents. *See* Fla. Stat. § 480.033(3) (defining "massage" as "the manipulation of the soft tissues of the human body with the hand, foot, arm, or elbow, whether or not such manipulation is aided by hydrotherapy, including colonic irrigation, or thermal therapy; any electrical or mechanical device; or the application to the human body of a chemical or herbal preparation.") (emphasis added). And massage, as previously set forth, in not reimbursable under the No-Fault Law.   With these principles in mind, the Court now turns to Plaintiffs' claims.

**B.      GEICO is Entitled to Summary Judgment on its Declaratory Judgment Claim**

"The federal courts are confined by Article III of the Constitution to adjudicating only actual 'cases' and 'controversies.'" *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999). "The Declaratory Judgment Act, 28 U.S.C. § 2201, echoing the case or controversy requirement of [A]rticle III of the Constitution provides that a declaratory judgment may only be issued in the case of an actual controversy." *Walden v. Centers for Disease Control and Prevention*, 669 F.3d 1277, 1284 (11th Cir.2012) (*quoting Emory v. Peeler*, 756 F.2d 1547, 1551–52 (11th Cir. 1985)) (internal quotation marks omitted). "That is under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests." *Emory*, 756 F.2d at 1552.

There is no dispute that GEICO has received at least $79,000.00 in billing from Quality for purported patient examinations and "physical therapy" services that remain outstanding and unpaid, and that Quality is attempting to collect on these charges. GEICO seeks summary judgment on its declaratory judgment claim, which seeks a declaration that GEICO is not obligated to pay these outstanding claims. As a result, there is clearly a substantial continuing controversy between parties having adverse legal interests to warrant the issuance of a declaratory judgment.

It is undisputed that all of Quality's examination charges were upcoded, and misrepresented the nature and extent of the examinations. It likewise is undisputed that Quality, Martinez, Garcia, Keane, and Queral knew, or should have known, that their examination charges were upcoded. In this context, the law is clear that GEICO is not obligated to pay upcoded charges. *See* Fla. Stat. § 627.736(5)(b)(1)(e). Moreover, GEICO is not required to pay charges to any person that "knowingly submits a false or misleading statement relating to the claim or charges." *See* Fla. Stat. § 627.736(5)(1)(c). Furthermore, the statutory definition of "knowingly" encompasses recklessness or willful ignorance, and does not require specific intent to defraud. *See* Fla. Stat. § 627.732(10).   For this

13

reason alone, none of Quality's bills are eligible for reimbursement. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Williams*, 824 F.3d 1311, 1316-1317 (11th Cir. 2014) (concluding that fraud in a single PIP charge poisons the collective of all charges); *Chiropractic One, Inc. v. State Farm Mut. Auto*., 92 So. 3d 871, 875 (Fla. 5th DCA 2012) (any knowing submission of false or misleading PIP charges renders all of a health care provider's PIP claims unreimbursable).

In addition, pursuant to Fla. Stat. § 627.736(5)(b)(1)(d), GEICO is not required to pay charges that "do not substantially meet the applicable requirements of" Section 627.736(5)(d): here it is undisputed that all of Defendants' purported "physical therapy" charges falsely represented that Keane performed or at least directly supervised Viera's performance of the services, when in fact he did not.

But even if Viera were properly designated on Quality's invoices, Quality would still have been unable to obtain reimbursement for Viera's services anyway. As this Court previously concluded, to the extent that Viera was performing physical therapy services without supervision and incidental to his practice of massage, he would merely be practicing massage, which is not eligible for PIP reimbursement (DE 58). *See also Gov't Employees Ins. Co. v. DG Esthetic & Therapy Ctr., Inc.*, 2019 WL 1992930, at *5 (S.D. Fla. Apr. 19, 2019).

The Court comprehends Defendants' argument to be that a massage therapist can somehow tunnel a backdoor to PIP reimbursement without meeting any of the statutory requirements of physical therapy licensure, by the simply expedient of providing a massage in tandem with physical therapy, but only charging for the physical therapy portion of the service. The Court rejects Defendants' argument. This contention is not only counterintuitive but contrary to the plain terms of the relevant statutes, as recited above.

In sum, the Court finds that all of Quality's outstanding billing for "physical therapy" services was in fact "massage" performed by an unsupervised massage therapist, and therefore is non-

reimbursable. Accordingly, GEICO is entitled to a declaratory judgment that it need not pay the charges. *See, e.g.,* Fla. Stat. §§ 627.736(1)(a)(5) (massage is not eligible for PIP reimbursement); 627.736(5)(b)(1)(b) (unlawful services are not eligible for PIP reimbursement). Summary judgment is granted in favor of GEICO on this claim.

**C.    GEICO is Entitled to Summary Judgment on its Unjust Enrichment Claim**

GEICO seeks summary judgment on its unjust enrichment claim. To state a claim of unjust enrichment under Florida law, a plaintiff must prove three elements: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citation omitted).

"[C]ourts have found a cause of action for unjust enrichment appropriate when a service provider 'accepts and retains benefits that it is not legally entitled to receive in the first place.'" *B&A Diagnostic, Inc., supra* (*quoting State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013)).

It is undisputed that GEICO paid Quality $145,716.34 for purported patient examinations and "physical therapy" services. As demonstrated above, Quality was not entitled to reimbursement because: (i) the examination charges were upcoded; (ii) Defendants "knowingly" made misrepresentations in connection with the claims; (iii) Defendants' "physical therapy" services constituted "massage" performed by an unsupervised massage therapist; and (iv) Defendants' billing for the "physical therapy" services falsely represented that Keane performed or at least directly supervised the services.

Accordingly, GEICO is entitled to summary judgment on its unjust enrichment clam.

15

**D.     GEICO is Entitled to Summary Judgment on its FDUTPA Claim**

GEICO also seeks entry of summary judgment on its FDUTPA claim. To establish a claim under the FDUTPA, GEICO must show (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla., Inc*., 103 F. Supp. 3d 1343, 1354 (S.D. Fla. 2015) (citation omitted). "A deceptive act or practice is one that is likely to mislead consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.* (internal quotation marks and citation omitted). The unlawful operation of a medical clinic to obtain PIP benefits that an insurer would have the statutory right to deny has been found to constitute "deceptive or unfair practices." *See, e.g., State Farm Mut. Auto. Ins. Co. v. First Care Solution, Inc*., 232 F. Supp. 3d 1257, 1268 (S.D. Fla. 2017).

Here, the undisputed facts set forth above also entitle GEICO to summary judgment on its FDUTPA claim. It is clear that Defendants engaged in "unfair practices" and "deceptive acts" by upcoding examination charges, billing for massage services performed by an unsupervised masseuse, and then falsely representing that Keane performed or directly supervised the services. The undisputed facts also demonstrate that—based upon Defendants' deceptive and unfair acts—GEICO paid Quality $145,716.34.  Accordingly, GEICO is entitled to summary judgment on its FDUTPA claim.

**E.     GEICO is Entitled to Summary Judgment on its Common Law Fraud Claim**

GEICO also contends it is entitled to summary judgment on its claim for common law fraud. The elements of common law fraud under Florida law are: "(1) a false statement of fact; (2) known by the person making the statement to be false at the time it was made; (3) made for the purpose of inducing another to act in reliance thereon; (4) action by the other person in reliance on the correctness of the statement; and (5) resulting damage to the other person." *State Farm Mut. Auto. Ins. Co. v.*

*Altamonte Springs Diagnostic Imaging, Inc.*, No. 6:11-cv-1373, 2011 WL 6450769, at \*4 (M.D. Fla. Dec. 21, 2011) (*citing Gandy v. Trans World Comput. Tech. Grp.*, 787 So. 2d 116, 118 (Fla. 2d DCA 2001) (other citations omitted)).

As noted above, Defendants admit that they knew or should have known the requirements for the CPT codes they used to bill GEICO for their purported health care services. Defendants admit that all of the CPT codes Quality, Martinez, Garcia, Keane, and Queral used to bill GEICO for Keane's purported examinations at Quality misrepresented the nature and extent of the examinations, and falsely inflated the level of PIP reimbursement Quality received. Accordingly, the Court finds that GEICO has demonstrated that Defendants acted with the requisite knowledge and fraudulent intent, and Defendants have not met their burden to demonstrate a genuine dispute of fact on this issue.

The Court addresses Defendants' contentions regarding reliance and materiality in the section that follows. Because the Court rejects Defendants' arguments in this regard, and because GEICO has established there is no issue of material fact as to any of the other elements of its common law fraud claim, GEICO is entitled to summary judgment on this claim as well.

## F.   Defendants' Motion for Summary Judgment Must be Denied

In support of their motion for summary judgment and in opposition to Plaintiffs' motion, Defendants advance several arguments that substantially track their affirmative defenses. These arguments are unavailing.

First, Defendants claim that, although they have admitted making an extensive series of misrepresentations to GEICO, those misrepresentations were not "material," because GEICO supposedly paid the PIP claims with knowledge of Defendants' fraud. At the outset, the Court notes that neither "materiality" nor "reliance" are elements of GEICO's declaratory judgment, unjust

enrichment, or FDUTPA claims, and therefore, will have no effect on the Court's summary judgment determination in this regard.

In any event, as to the fraud claim, the Court is unpersuaded by Defendants' materiality argument. It is clear to the Court that any misrepresentation that causes an unreimbursable claim to become reimbursable and results in overpayments in excess of $145,000, is material.

Defendants' reliance argument is similarly misplaced. In essence, Defendants fault GEICO for not doing more to uncover the falsity of their representations, as if a fraudster can somehow inoculate himself from civil liability by being really good at deceiving his victim. This is not the law, however. GEICO was entitled to rely upon Defendants' PIP claims. *Suite 225, Inc. v. Lantana Ins. Ltd.,* 625 F. App'x 502, 508 (11th Cir. 2015) (agreeing with lower court decision that found "absurd" an insured's argument that insurer "should have conducted a more thorough investigation" and agreeing further that "the insurer is entitled to rely on the representations of an insured, without checking all its files to determine if the insured is committing a fraud"). And, consistent with this precept, the No-Fault Law permits insurers to challenge the validity of PIP claims at any time, even after they are paid. *See* Fla. Stat. § 627.736(4)(b)(6) (permitting insurers to contest the validity and lawfulness of PIP claims "at any time, including after payment of the claim").

Defendants attempt to rebut GEICO's presumptive reliance on the fraudulent PIP claims by claiming that GEICO knew or should have known that their claims were false or misleading. In particular, Defendants posit that GEICO knew or should have known that Viera was performing the purported "physical therapy" services without supervision. Although (if true) this contention may be relevant to fraud, and perhaps indirectly relevant to Plaintiffs' claim for unjust enrichment, Defendants have not produced any competent evidence to support their theory.

Indeed, Defendants' only evidence concerning reliance appears to be that on some unspecified dates, some unidentified "GEICO representatives" visited Quality, at which point Garcia supposedly told them that Viera "was performing the physical therapy at the facility," but Defendants provide no specifics concerning these alleged conversations. Without information regarding, at a minimum, when these alleged conversations happened in relation to GEICO's payment of Quality's physical therapy bills, the Court finds that these contentions are insufficient on their face to create a triable issue of fact. Significantly, moreover, even if GEICO was on notice that Viera was performing the physical therapy services, this fact by itself does not suggest that the services are unreimbursable, because all of Quality's bills for the physical therapy services falsely represented that Keane had directly supervised Viera's performance of the services, which had the effect of making the services appear on their face to be eligible for PIP reimbursement, when in fact they were not.

Finally, Defendants argue that the doctrines of equitable estoppel, collateral estoppel and res judicata preclude Plaintiffs' claims. Although the court readopts its prior decision declining to apply the doctrine of collateral estoppel, the Court has concerns about the applicability of res judicata and equitable estoppel. However, the briefing has not distilled in an accessible format critical information regarding: (a) which invoices, specifically, were withdrawn by Quality; (b) which invoices, specifically, were litigated in county court; and (c) what the status of the county court appellate proceedings is at present. If certain invoices, or portions thereof, have been withdrawn or litigated to conclusion in another forum, the Court believes (without deciding the matter at this juncture) that it may be appropriate to offset those claims from the amounts recoverable in this proceeding.

IV.     **CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' Motion for Summary Judgment (DE 60) is **GRANTED IN PART AND DENIED IN PART**, and Defendants' Motion for Summary Judgment (DE 63) is **DENIED**.

The Court will take the affirmative defense issues relating to equitable estoppel and claim preclusion under advisement. In this connection, parties are **ORDERED** to submit a joint filing no later than **January 3, 2020** indicating: (a) which invoices, of those implicated by this lawsuit, specifically, were withdrawn by Quality; (b) which invoices (for which preclusion is sought) were litigated in county court; and (c) the current status of each relevant county court appellate proceeding, with style and case number. For ease of reference, the parties shall jointly produce a chart containing the relevant information and highlight any overlapping invoices.

Finally, the Court **ORDERS** the parties to mediate this matter no later than **January 3, 2020**. The Court is alarmed that the parties have not conducted mediation in this matter. Although there is a pending motion to stay mediation, this alone does not have the effect of tolling deadlines or nullifying the Court's orders. The parties shall file a joint status report indicating the result of their mediation within 3 days of its occurrence, and if the parties are able to reach an agreement, shall notify the Court immediately of the same.

**DONE AND ORDERED** in Chambers at Miami, Florida this ___ of December, 2019.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE